H7kdcrus

                              Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                           15 Cr. 0338(PKC)

5    JON CRUZ,

6              Defendant.

7    ------------------------------x

8
                                           July 20, 2017
9                                          2:29 p.m.

10
     Before:
11
                        HON. P. KEVIN CASTEL,
12
                                           District Judge
13

14                        APPEARANCES

15   JOON H. KIM
          Acting United States Attorney for the
16        Southern District of New York
     BY:  SHAWN G. CROWLEY
17             Assistant United States Attorney

18   STEVE ZISSOU & ASSOCIATES
          Attorneys for Defendant
19   BY:  STEVE ZISSOU

20   COLSON LAW PLLC
          Attorneys for Defendant
21   BY:  DEBORAH A. COLSON

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

H7kdcrus

Sentence

1        THE COURT:  Please be seated.

2        THE CLERK:  United States of America against Jon Cruz.

3        For the government?

4        MS. CROWLEY:  Good afternoon, your Honor.  Shawn

5   Crowley for the government.

6        THE COURT:  Afternoon, Ms. Crowley.

7        And for the defendant?

8        MR. ZISSOU:  Mr. Cruz is represented by Steve Zissou

9   and Deborah Colson.  Good afternoon, your Honor.

10        THE COURT:  All right.

11        Mr. Zissou, let me go through the materials I have.

12   The question will be whether I have everything I should have.

13        I have a presentence report, recommendation and

14   addendum that was revised by Probation on December 13, 2016.  I

15   have a sentencing memorandum from the government which was

16   received on or about July 10.  It's dated July 6, 2017.

17        I also have victim impact statements from -- on behalf

18   of -- or I have five victim impact statements in both redacted

19   and unredacted form.

20        I also have a sentencing memorandum for Mr. Cruz which

21   was transmitted on or about June 21, and of course annexes

22   reports from a licensed social worker, Erik Mercer, from Dr.

23   Alsip, from Dr. Kaplan, Dr. Martinez, Dr. Kreuger.  There is a

24   report in here from a consulting project.  I believe this was

25   done in connection with bail.  There is a polygraph report.

H7kdcrus
                        Sentence

1   There are a bunch of letters of support, and, of course, there

2   is the DVD that I gather was prepared in connection with a bail

3   application.

4          Do I have everything I should have on the subject of

5   sentencing?

6          MR. ZISSOU:  I believe so, Judge.  If you did not

7   mention it, the attorney for the government submitted a

8   sentencing memorandum, too, and --

9          THE COURT:  I didn't mention it, you are absolutely

10  right.  I thought I had mentioned it because I said I got it --

11  it is dated on or about July 6.  Is there a second memo?

12         MS. CROWLEY:  No.  That is the only one.

13         THE COURT:  OK.  All right.

14         MR. ZISSOU:  Thank you very much.

15         THE COURT:  All right.  Does the defendant -- does the

16  government agree I have everything I should have on the subject

17  of sentencing?

18         MS. CROWLEY:  Yes, your Honor.

19         THE COURT:  All right.

20         Has the defendant read, reviewed, and discussed with

21  you the presentence report, recommendation and addendum?

22         MR. ZISSOU:  He has, your Honor.

23         THE COURT:  Does the defendant have any objection to

24  the facts set forth in the presentence report?

25         MR. ZISSOU:  We do not, your Honor.  There is one just

H7kdcrus
Sentence

1   change that we request.  I have not made an issue of this.  It

2   just has to do with pedigree.

3           The Probation Department indicated that Mr. Cruz was

4   male Hispanic.  And while it is true that his father was born

5   in Spain, he was raised Jewish.  He has been bar mitzvahed.  He

6   has never identified as Hispanic in any college application or

7   on any job application.  And so we just ask for that change to

8   his pedigree or the Probation Department be directed to make

9   that change.

10          THE COURT:  Any objection?

11          MS. CROWLEY:  No, your Honor.

12          THE COURT:  All right.  So the whole line will be

13   taken out.

14          All right.  Any objection to the guideline calculation

15   in the presentence report?

16          MR. ZISSOU:  No, your Honor.

17          THE COURT:  All right.  Does the government have any

18   objections to the facts set forth in the presentence report?

19          MS. CROWLEY:  We do not, your Honor.

20          THE COURT:  Any objection to the guideline

21   calculation?

22          MS. CROWLEY:  No objection.

23          THE COURT:  All right.  I adopt as my findings of fact

24   the facts set forth in the presentence report, and, further, on

25   my review, the guidelines were correctly calculated.

H7kdcrus
Sentence

1          So the defendant is at total offense level 33,

2     Criminal History Category I.  The statutory range is he must

3     receive a mandatory minimum sentence of five years and may

4     receive a sentence up to 20 years.  The guideline range of

5     imprisonment is 135 to 168 months, and the recommended sentence

6     from the Office of Probation is 135 months' imprisonment.

7          I will now give Mr. Zissou an opportunity to speak on

8     behalf of the defendant.

9          MR. ZISSOU:  Judge, there are a number of things that

10    I should bring, in addition, to your attention, although it is

11    seldom that counsel is able to approach accord at sentencing,

12    having submitted virtually every conceivable thing that can be

13    submitted, but there is always a little bit more to say.  As

14    your Honor knows, that's frankly how lawyers operate.  There is

15    one more thing we might be able to say to convince a judge that

16    what we recommend is the appropriate thing.

17         Much of what we submitted is a function of Mr. Cruz's

18    embrace of his situation.  And I should -- I should really

19    start with that.  Part of it is family, and no one can mince

20    that standing behind me is family, friends, former teachers,

21    colleagues, students.  It's been astounding from the beginning,

22    because that has been the approach.  That has been how this

23    case played out from the beginning.

24         And it was difficult for me to really put things in

25    perspective because given the nature of the charges and what

H7kdcrus
Sentence

1    Mr. Cruz was facing, lawyers sort of look at things logically,

2    scientifically.  We look for evidence.  We are taught to be

3    skeptical of everything.  And I first met him the day after I

4    think he was arrested.  He was in detention at the MCC.  He was

5    in the Special Housing Unit because of concerns about his

6    safety.  And he had a number of concerns, but they weren't the

7    kind of concerns that clients usually have when they are

8    arrested.  Those clients, they want to know what am I facing,

9    what is it looking like.

10       And Jon had a number of unusual requests, sort of a

11   function of his, well, as we know, he has an obsessive

12   compulsive disorder.  For example, he wanted to know if I would

13   call the gym to let them know he wasn't coming for his training

14   lesson the next day.  But one of the things that he wanted to

15   know was whether or not the complaint that was filed in this

16   case would be made public.  And when I looked at him, I said

17   not only is it a public record, it is filed on the court

18   docket, but the New York Post has printed it in all its glory.

19   And an unusual thing happened at that moment.  It was as if a

20   weight had been lifted from his shoulders.  He adopted a

21   resignation, if you will, but not a negative resignation.  It

22   was a positive resignation.

23       He looked at it and he said, well, then, it's out now.

24   He knew at that moment that this alternate universe he was

25   living in, this other life that he was living, the life that

H7kdcrus
                              Sentence

1    the folks in this courtroom knew nothing about, the life that

2    he kept hidden from them, he knew it was all out there, and he

3    knew that he would either be abandoned or not abandoned.  Folks

4    would stand by him or they would not.  But he knew that the

5    shackles, if you will, the figurative shackles, were going to

6    be removed, and what would remain is the physical walls that

7    surrounded him, the bars and the life in prison that only your

8    Honor can control, putting aside the mandatory minimum for a

9    moment.

10           And he knew.  And from that moment in time he has had

11   this embrace of the future.  And so it should not surprise the

12   Court that all of the mental health experts who have analyzed

13   him have come up with the same conclusion.  He's literally no

14   risk of future danger, and part of that is because he looks

15   forward to the future.  He's freed of the shackles, freed of

16   the bonds, freed of what had imprisoned him not just while he

17   was a teacher but when he was a teenager.  His shacks started

18   back then, as the medical -- as the mental health records

19   indicate, all the way back then.

20           This was an addiction, if you will, an obsessive

21   compulsive disorder, an issue that poisoned him.  And despite

22   the fact that he is also this extraordinary young man,

23   reflected in the DVD that we submitted to your Honor -- and,

24   frankly, Judge just as an aside, as we were going forward,

25   there were so many -- I'm going to get to those in a minute --

H7kdcrus
Sentence

1   so many people day after day who would call me, who would reach

2   out to me, people who would say the same thing.  We know what

3   he has done and we know it is bad and we don't forgive him and

4   we don't condone it, but we know there is so much good in him.

5   We know.  And everyone said the same thing.  What he's done for

6   me, what he's done for our family, what he's done for my son or

7   my daughter, that was the sentiment.

8          So we decided, well, we'd better put this together in

9   a way that is a little bit easier to communicate.  Everyone in

10   the room, every letter that was written to you, everyone in the

11   room would have the same opinion and views as those that were

12   expressed in the mitigation submission that we gave to you.

13   And that's what makes it possible for this young man.

14          And so I thought about it.  It was -- it was -- I

15   couldn't quite -- I couldn't quite put my finger on it.  What

16   was it?  Why is this young man so calm, if you will?  Why is he

17   so hopeful?  Why is he not worried about what's going to happen

18   as much as a human would be?  And, you know, you get to --

19   Judge, as you know, you get to a certain age and if you have

20   had a life full of experiences, things kind of pop into your

21   head.  And so as I'm sitting with him, I couldn't -- what

22   popped into my head was not what a lawyer might think,

23   carefully analyzing evidence and trying to be logical.  I

24   thought back to the words of a philosopher written on parchment

25   2,000 years ago about the truth and how the truth will set you

H7kdcrus
                            Sentence

1    free.

2                And he's not free, we know that.  He's not physically

3    free.  There is still much to determine that the Court will, as

4    I said.  But he is so much freer now than he was before.  He

5    was freer when he was detained pending the Court's

6    determination of bail.  He was free -- he was free after he was

7    released on the most stringent conditions known to the

8    sentencing -- to the Bail Reform Act.  He was not simply

9    released on bond, but when Judge Woods reviewed the bond --

10   Judge Gregory Woods reviewed the bond, he imposed additional

11   conditions -- house incarceration, not just house arrest -- I'm

12   not sure I know the difference, but it is house

13   incarceration -- a custodial parent involved, residing with his

14   parents, no contact, no smart phones, no computers.

15               And, still, he was free then.  He continued to be free

16   of what mattered, frankly, after he was detained.  Of course,

17   your Honor recalls the Bail Reform Act requires detention when

18   somebody is convicted of an offense such as this, and he was

19   detained on -- last September.  And to say that I wasn't

20   concerned because of who he is and what he is and what he was

21   charged with and the notoriety of this case would be an

22   understatement.

23               As your Honor knows, sometimes if you try to do too

24   much, it's the opposite.  Sometimes if you just step back and

25   let the process work, it works out.  I did that with some

H7kdcrus
Sentence

1   trepidation.  And as soon as he was detained, I went to see him

2   the next day and, oddly enough, he was doing well.  Oddly

3   enough, he wasn't put in segregation.  He wasn't put in a

4   special unit.  He wasn't put in protective custody.  He was in

5   a unit with the most dangerous criminals in our society --

6   murderers, gang members, you name it.  I thought for a minute

7   I've got to get him out of here, this can't be, he is not going

8   to last there.  This is a man that never stops surprising me,

9   and his family and friends and supporters never stop surprising

10  me.

11          So after a few days and after a few weeks, Jon became

12  in his unit what he was in his high school -- kind, generous,

13  considerate.  He became the interpreter of documents.  He

14  helped people write letters, helped them understand what they

15  were facing.  One of the things that they charge you for at the

16  MCC, they have this CorrLinks system where the inmates can send

17  messages, they charge you a large amount.  And a good portion

18  of the folks in there, they don't read and write very well.  He

19  reads faster than any other human being I have ever met and he

20  writes faster.  He types faster than any other human being I've

21  ever met.  Part of that is what got him in trouble,

22  unfortunately.  But all of a sudden he became a -- a valued

23  member of that unit.  Gang members looked for his counsel.  And

24  other people looked forward to his library.  In his cell is the

25  library of the unit.  He has hundreds of books, magazines,

H7kdcrus
                              Sentence

1    periodicals.  And folks come in and they read.  And he has made

2    the unit a happier, safer place for everyone to be.

3            It continues to astound me.  I explained it to --

4    recently, I discussed it with his grandfather, Alan, about what

5    he had been able to do in the time he was in jail.  And Alan --

6    Mr. Belzer, I should say, expressed how proud he was of his

7    grandson, despite what he had done, and said, He's made a life

8    for himself and I'm very proud of him.

9            There are other people, as I said, in the room here,

10   some of them come from California, somebody from the Kyle

11   family.  I don't mean to point everyone out.  There are folks

12   from his -- his high school teachers, as I've said earlier,

13   folks that come from far away, from distant places to be here

14   for him.  That is part of what has been going on for the last

15   two years.  It sort of died off for a little bit because so

16   many people were in touch with him, so many so often, I thought

17   it had pretty much come to an end until this week and, oddly

18   enough, I got a message from Amanda's father and Amanda I think

19   has a letter to the Court; it is in the file.  And it was from

20   her father, who had sent me a message saying that Amanda was in

21   school in Europe and couldn't come back for the sentencing but

22   insisted that I appear instead.  So Amanda's father is here as

23   well on behalf of his daughter.  And she is hardly --

24           THE COURT:  You have to keep your voice up, please.

25           MR. ZISSOU:  She is hardly the only one.

H7kdcrus
Sentence

1          So I'd say this to you, Judge.  I say it in a way that

2     is unusual for a lawyer to be able to do.  It just seems that

3     every step of the way here there has been some fortuitous

4     event.  Everything that happens, even things that I am not

5     pleased with, like him getting detained or him being released

6     on stringent conditions, conditions I thought that were too

7     burdensome, and for most were, there has been some benefit.

8          One of the benefits is because of the conditions he

9     had to come to the office to review discovery.  And he was

10    there four or five days a week, sometimes on Saturdays, because

11    I like to get work done on Saturdays, too, and it is a little

12    bit quieter.  And him and I were together for just to say a

13    lot.  And normally lawyers when they appear before a judge,

14    they don't really know the client.  You know, they're

15    advocating for their client.  They don't really know him well.

16    They know what everyone else in the courtroom knows has

17    happened.  But I sat with him day after day and came to

18    understand the kind of young man that he was.

19         One of the things that most moved me was we have

20    working for us a senior citizen.  She has been with us for a

21    while, and she struggles sometimes to figure out how to work

22    what's called modern technology, like phones, for example.  And

23    with others, she has been with us for a long time, and she

24    works for one of my partners primarily, and she is very

25    concerned that he will figure out that she needs stuff

H7kdcrus
                              Sentence

1    explained to her sometimes.

2              And I'd be sitting with Jon, or I would be sitting in

3    my office and Jon would be waiting for me in the conference

4    room, and I'd hear way back in my office, "Jon.  Jon."  And it

5    would be Theresa.  "Jon, how do you" -- one thing or another.

6    Or "What is this person saying?"  Or -- and I could hear from a

7    distance Jon Cruz kindly, patiently explaining it to her.  This

8    went on regularly.

9              He is, I know of no other way to say it, he is perhaps

10   the kindest, most considerate human being I have ever met.  And

11   I say that, knowing better than anyone what he is accused of

12   and what he has done, and I know it better than folks who think

13   they know this case.

14             There was a long time when Jon rationalized what he

15   was doing.  There was a long time when he thought that -- or

16   convinced himself that what he was doing was not a real harm to

17   anyone, and he'll explain this to you.  I know he has submitted

18   a lengthy statement to the Court in writing, but he's got a

19   little bit more to say to explain, and I'm sure your Honor will

20   be grateful to hear that.

21             Six months -- I mean, six years, Judge, is more than

22   sufficient in this case.  Indeed, frankly, I wish we had been

23   able -- if I had been more convincing and had been able to

24   convince the Court or the United States Attorney's Office to

25   reduce the count to zero to ten so we could stand before the

H7kdcrus
Sentence

 1    Court and ask you to impose a lesser sentence, but certainly --

 2    certainly 60 months is sufficient but not greater than

 3    necessary in this case, and I respectfully urge you to impose

 4    that sentence.

 5               THE COURT:  Thank you, Mr. Zissou.

 6               Mr. Cruz, this is your opportunity to speak, to

 7    address the Court directly, to bring to my attention any facts

 8    or circumstances that you believe I should take account of in

 9    passing sentence on you today.  If there is anything you wish

10    to say, Mr. Cruz, this is the time to say it.

11               Move the microphone over, please.

12               THE DEFENDANT:  Thank you, your Honor.

13               THE COURT:  Why don't you do it from a seated

14    position.  I think it would work better.

15               THE DEFENDANT:  Thank you, your Honor.  I want to

16    thank you for your time and your patience in considering my

17    case, and for approaching what I know is a really difficult

18    matter with an open mind.

19               There are many people that I hurt and many things that

20    I deeply regret.  From the teenagers that I obsessively reached

21    out to, to my own students who looked up to me, to my adoring

22    parents who have always supported me, to my grandfather for

23    placing a trust in me that I betrayed, my former students and

24    their parents and my family and friends who have not abandoned

25    me, I am very sorry to all of them.

H7kdcrus
                               Sentence

1          As for the teenagers that I victimized:  I understand

2    now that I had a real impact on them, and that I was the person

3    responsible for our interactions.  I cannot say that I felt the

4    same way when I was chatting with them.  A person is capable of

5    rationalizing just about anything.  But I do now, and I am

6    deeply ashamed.

7          I have damaged these teenagers' relationships with

8    their parents.  I know that I have done this because in each

9    and every case parents have discovered that their sons were

10   hiding something from them.  A teenager values nothing so much

11   as his or her privacy.  I am positive that there is no longer

12   any privacy for these teenagers.  They were chatting with a

13   stranger online, sending nude photographs of themselves to him,

14   and I was the one who put them in this situation, and I am

15   truly sorry.

16         I have tremendously complicated matters for teenagers

17   during a period of life where identity is most malleable.  My

18   actions have likely instilled in these teenagers profound

19   doubts about themselves.  They no doubt feel very vulnerable.

20   They are no doubt less trusting of their own judgment.  I'm not

21   sure if I can enumerate what all of their doubts may be, and

22   that's what troubles me the most.

23         Part of the road to redemption includes acceptance of

24   responsibility and expressions of remorse.  So it is common

25   that people in my position stand before your Honor, as I do

H7kdcrus
                                    Sentence

1    today, and explain how sorry they are and only wish that they

2    could undo the damage caused by their actions.  That is

3    certainly true for me.

4          To the parents of the young men that I chatted with, I

5    cannot undo what I have done, but I can tell you that I have

6    been receiving treatment and will continue to do so.  There

7    will be no future sons of parents that will be put through what

8    you have suffered.  I hope that this offers some comfort to

9    these parents.  I hope and only wish that I could do more.

10         Your Honor, I've come to realize that whatever my

11   mental issues were, they didn't justify me using teenagers in

12   an elaborate alternate reality fantasy to reinforce my feelings

13   about myself, to reenact my own insecurities from childhood.  I

14   was subjecting these teenagers to my own psychodrama.  Prior to

15   my arrest, given the nature of my interactions, as I discussed

16   in my writing to the Court, it was incredibly difficult for me

17   to empathize with my victims, because I didn't see them as

18   such.  I felt powerless.  But in therapy I've come to realize

19   that, in fact, I had all the power in these interactions.  I

20   was the one who sought out these teenagers, and I was the one

21   responsible for our interactions.  I was not the victim; I was

22   the offender.

23         My students looked to me as a leader and a role model

24   through my entire career.  They would come to me always,

25   sharing with me all sorts of personal problems and asking for

H7kdcrus
                              Sentence

 1   advice.  I worked hard to inspire them to be the best people

 2   they could be.  This was real.  But my online conduct -- my

 3   obsessive behavior -- was also real.  And I failed my students

 4   by not holding my private life to the high standards demanded

 5   by virtue of being a teacher and of being the director of the

 6   Bronx Science Speech & Debate Team.

 7          More than any other student, I hurt the student whose

 8   photograph I used in my fake profiles online.  In many ways, I

 9   was his mentor and his confidante, helping him through the many

10   obstacles of teenage life.  I saw a lot of myself in him.  It

11   pains me tremendously to imagine how deeply betrayed he must

12   feel and to know that he must constantly question whether my

13   entire association with him was some kind of sham.  I am so

14   sorry for hurting him.

15          Your Honor, my path forward will not be easy, and that

16   is a result of my own crimes.  But I am determined to find a

17   way to continue dedicating myself to the betterment of others.

18   I have always believed in public service, and I am still

19   committed to a life of it, even if it's not in the forms I had

20   originally wanted when I was younger.

21          That commitment has guided me since I entered prison.

22   I volunteered to work as a GED instructor as soon as the

23   opportunity was offered.  But before then, and since then,

24   while waiting for an official role, I have endeavored to be a

25   resource to my fellow inmates.  Steve has told you a little bit

H7kdcrus
Sentence

about this.  There are some other things that I would like to

share.  In one-on-one sessions, in group discussions, and in

informal classes, I have been able to be a teacher again.  I

hope to be able to formalize this at the compound to which I am

designated.

Your honor, since being remanded to MDC Brooklyn in

September, I have taught fellow inmates how the justice system

works and instilled in them an appreciation for why it ought to

be respected.  I have worked with both the illiterate and the

functionally illiterate to develop their reading and writing

skills.  @I agree with everything Steve mentioned, and my cell

has become an informal lending library in both of the units in

which I have lived.  During the presidential race, I was happy

to explain the peculiarities of the American electoral system

to the many people who had questions.  I have helped connect

inmates who were about to be released with services on the

outside that directed them to a place to stay and to job

opportunities.  I have asked friends on the outside to

translate legal materials for inmates who don't speak English

so that they will better understand their cases.

And I have found, much as I did when I was a coach,

that people feel comfortable approaching me not just for

specific knowledge but for more general advice as well.  I have

helped hardened criminals reestablish ties with loved ones with

whom they have long since lost contact.  I have helped the

H7kdcrus
Sentence

1   newly incarcerated recognize their situation as an opportunity

2   to grow and to change.  And I have encouraged people to

3   understand their own value as individuals and their ability to

4   be productive members of society in the future.

5           Your Honor, being in prison is really difficult, and

6   it is really humbling.  But it's not all negative, because,

7   just as I've encouraged fellow inmates to think of prison as an

8   opportunity for renewal and self-reflection, I have practiced

9   what I've preached, and I've used prison as an opportunity to

10  rebuild strong relationships with my friends and my family, to

11  work on building a better life for myself, and to reflect on

12  the impact of my crimes.  I have learned that I can still teach

13  and help others even if I can no longer be a high school

14  teacher.  And I am determined to make sure my future behavior

15  and sense of self are worthy of the people in my life who are

16  supporting me and who want to see me succeed again.  And I'm

17  committed to making sure that I never, ever cause this kind of

18  pain and harm again to anyone.

19          THE COURT:  Thank you, Mr. Cruz.

20          MR. ZISSOU:  Judge, I beg your pardon.  I should have

21  mentioned that Dr. Kaplan, Dr. Kreuger and Mr. Mercer are

22  present, should the Court have any questions about their

23  findings.

24          THE COURT:  This is the government's opportunity to

25  speak.  Ms. Crowley.

H7kdcrus
Sentence

1          MS. CROWLEY:  Yes, Judge.  I am going to be relatively

2     brief.  A lot has been said already, and I know your Honor has

3     reviewed the lengthy submissions from both the parties and from

4     the Probation Department.

5          Much has been said in the words of defense counsel and

6     in the defendant's submission about Mr. Cruz's attempts to

7     rehabilitate after his arrest, to attone for the things he did,

8     and about the great successes and accomplishments he had before

9     he was arrested.  But I would like to ask the Court to consider

10    the conduct, what actually happened in this case, why we're

11    here, or, to use Mr. Zissou's word, "the truth."

12         There is no doubt that Mr. Cruz has taken substantial

13    steps to rehabilitate himself and to contribute to his

14    community after his arrest.  But there are two things I would

15    like to address specifically, and both of them I think

16    underscore that the defense and the government have a

17    fundamentally different view of Mr. Cruz's culpability in this

18    case, to some extent.

19         Mr. Cruz, in his submission and in Mr. Zissou's words

20    today, suggests that the pornographic images that the defendant

21    solicited from children were a by-product of his obsessive

22    compulsive driven desire to chat with, in his words, popular

23    jocks.  For example, at page 6 of his submission, the defendant

24    writes that some of the boys during the course of the chats

25    happen to send images -- nude images of themselves.

H7kdcrus
Sentence

1          In addition, your Honor, the defendant and the defense

2     repeatedly refer to Mr. Cruz's victims as "teenagers," as

3     "popular jocks."  These were kids.  These boys did not just

4     happen to send photographs to Mr. Cruz.  He repeatedly

5     persistently requested them from them.  He paid for them.  And

6     in some cases, as your Honor knows from some of the chats that

7     the government included with the submission, he demanded them,

8     demanded the photographs.

9          I have no doubt that one of the defendant's aims in

10    this behavior that he conducted for years was to engage in

11    friendly banter with kids he considered to be cool.  But that

12    was not the primary goal.  He created a fake identity using the

13    photograph of a former student, pretended to be a teenager, and

14    engaged these young boys.  He began by complimenting them,

15    flattering them, and then gradually moved into conversations

16    about sex, and eventually solicited and often received nude and

17    pornographic photographs of themselves.

18         I'm sure that much of this was driven by the

19    defendant's desire to talk to the cool kids, as he says in his

20    submission and as some of the defendant's experts have said,

21    but what he actually sought to do, what he did, was far more

22    pernicious than that.  He solicited, paid for, and received

23    pornographic images of kids.  The seriousness of this just

24    cannot be minimized.

25         Second, a lot has been said -- and the Court should

H7kdcrus
                                Sentence

1    recognize -- about the accomplishments that Mr. Cruz had as a

2    teacher and a debate coach at Bronx Science, what he did for

3    the kids, he taught, and how he changed their lives.  He really

4    does appear to have been a great teacher, and I don't want to

5    minimize that.  But there are two sides to this aspect of

6    Mr. Cruz, and I want to talk for a second about the other side.

7    And that is his success as a teacher in some ways allowed him

8    to engage in his criminal conduct for many years.  In some

9    senses, your Honor, the defendant used his close relationships

10   with these kids to engage others, to victimize others.  He

11   flattered them.  He learned to speak their language.  He

12   learned how to manipulate them.

13          So, when the Court considers the many written letters

14   that have been submitted by Mr. Cruz's former students and

15   parents of those former students who have attested to the

16   impact that Mr. Cruz has had on their lives, I ask the Court to

17   also consider the other kids who Mr. Cruz has impacted, who are

18   not here today but some of whom have submitted victim impact

19   statements.  Some of them are not here because, frankly,

20   they're ashamed that they were drawn into this.  I ask you to

21   consider how the defendant impacted their lives in horrible

22   ways that they often will not get over.

23          Judge, your Honor notes from our submission that the

24   government seeks a sentence below the guidelines.  For many of

25   the reasons that Mr. Zissou and Mr. Cruz have said here today,

H7kdcrus
                          Sentence

1    the government recognizes that there are aspects of this

2    defendant that do not warrant a guidelines' sentence.  However,

3    what cannot be ignored here is the defendant's conduct for

4    years and the harm that he has caused to many, many victims,

5    and for those reasons, your Honor, the government seeks a

6    sentence substantially above the mandatory minimum 60 months.

7              THE COURT:  Thank you very much, Ms. Crowley.

8              This is the Court's statement of reasons for the

9    sentence to be imposed on Mr. Cruz.

10             May I help you, Mr. Zissou?

11             MR. ZISSOU:  Your Honor, I just wanted to respond to

12   one thing.  Would your Honor permit that?

13             THE COURT:  Go ahead.

14             MR. ZISSOU:  Judge, I think one thing Ms. Crowley just

15   fundamentally misunderstands, Mr. Cruz didn't become a teacher

16   or be a teacher to advance the chats or to learn the language

17   of teenagers.  He never stopped being a teenager.  He didn't

18   have to learn the language.  Thank you.

19             THE COURT:  Thank you, Mr. Zissou.

20             This is the Court's statement of reasons for the

21   sentence to be imposed on Jon Cruz.

22             In sentencing the defendant, I've considered all of

23   the materials that I referenced at the outset.  I've considered

24   the very thoughtful statements of defense counsel and of the

25   government and the sincere statement of Mr. Cruz, and I think

H7kdcrus
Sentence

1   the opportunity to make that statement was important to

2   Mr. Cruz's path to getting right health-wise and getting right

3   with the law.

4           I have considered each of the factors set forth in

5   Section 3553(a).  I need not recount all that I've considered,

6   but I will mention several of the factors.

7           Jon Cruz received a degree in history and then went on

8   for a Master's of Science Degree in Adolescent Education, with

9   a focus on students in grades 7 through 12.

10          In 2005, he became a substitute teacher at Bronx High

11  School of Science and then became the debate coach.  He had

12  remarkable success with his students, remarkable loyalty from

13  his students, and many of them have supported him in this time

14  of difficulty for Mr. Cruz.  He became a full-time teacher in

15  2011, and continued in that role until March of 2015.

16          What was not known is that Mr. Cruz would get up at

17  5 o'clock in the morning and go online and contact children

18  under the age of 16 and engage in conduct which I will describe

19  a little later.  He was so obsessed that he would often -- he

20  would stay online from 5 a.m. until it was time to leave for

21  work and then get home from work and go back on until 1 o'clock

22  in the morning.  Candidly, in one of his discussions with one

23  of his healthcare providers, he estimated that the number of

24  young people who he contacted, since he was a young person in a

25  similar manner, was probably measured in the thousands.

H7kdcrus
Sentence

1    I have victim impact statements from family members,

2    and I'm not going to take the time up to go through them all,

3    but I'm going to read from one of them:  "In December of 2013,

4    we discovered our 14-year-old son was being targeted by a

5    sexual predator.  What started out as our son believing he was

6    being compensated for modeling pictures turned into explicit

7    nude pictures being sent over the Internet and distributed to

8    pedophiles, as you can imagine our anger and utter devastation

9    over this as parents."

10    I will say, parenthetically, there is no evidence of

11    further distribution of photos that were received.

12    The letter goes on:  "Shortly after this was

13    discovered, our son became very angry and depressed.  He

14    started to act out at home and in school.  Over the last almost

15    three years we have dealt with anger issues, substance abuse,

16    and legal trouble.  Our son, who had always been a straight A,

17    well-behaved and well-adjusted kid, an all-American athlete,

18    struggles daily with emotional and behavioral problems.  He

19    went from a Presidential Excellence Award winner and childhood

20    wrestling prodigy to spending his 17th birthday under house

21    arrest.  We have spent countless hours and thousands of dollars

22    trying to help him through these struggles.  He attended rehab

23    and has ran away from home dozens of times.

24    "It has affected our family in such a way that our

25    life revolves around trying to keep him clean and on the right

H7kdcrus
Sentence

path.  We have both nearly lost our jobs, having to miss work

for him.  Our 10-year-old daughter has been exposed to things

at a very young age that she shouldn't have been subjected to."

Now, you might listen to something like that and you

might think that this is an overwrought parent, someone who is

exaggerating.  But then you look at the transcript of the

exchanges:

Mr. Cruz:  "What would I have to owe for a big series

of mirror pix now, a series of pix of you hard now (including

ones where you aren't holding it), a vid or two of you talking,

a vid or two of you stroking?  Honestly, name your price.  And

can we talk a bit anyway?  Are we cool?"

The victim says:  "You've been saying you were gonna

pay forever, man, and I've been sending pics and" -- he uses a

colloquialism -- constantly.  So I'd like to make sure you're

still willing to pay before more.  Just to make sure."

Mr. Cruz:  "I have been very good to you with paying

on time and being patient and stuff so I am not sure what you

mean.  I have always come through with money, and even given

you more than promised sometimes."

Mr. Cruz:  "Just saying."

And then the victim sends pornographic pictures.

Another exchange:

Mr. Cruz:  "Please keep sending; I waited all day

yesterday and today for these.  I am now out on a date so I

H7kdcrus
Sentence

1    cannot send the card; I did not want to get it until I received

2    this stuff since the last few times I have paid, you dropped

3    off for a while.  I will get you your card, but keep sending.

4    I may have to send it early in the morning.  Keep them coming,

5    please.  Thanks."

6          This is Mr. Cruz again:  Really send an incredible set

7    tonight.  To be honest, I am giving you a lot, and you know

8    that, and I have been really patient with stuff, so please go

9    nuts with this.  I will be quiet for a while."

10          The victim sends him five images and says, "I hope

11   these 5 can hold up over until later..."

12          And Mr. Cruz says:  I cannot text for a while but

13   please keep going; very intense stuff.  Bare feet, too, maybe

14   both bare feet and face as well as bare feet and hard.  I will

15   text back later."

16          I could go on but I will not.

17          I realize that Mr. Cruz has had his problems since he

18   was 12 or 13 years of age.  One can say that he did not choose

19   at the outset to have these problems and they have their

20   origins in a mental illness or personality disorder.  I accept

21   that.  But the goals of sentencing include just punishment.

22          Mr. Cruz is a smart man.  Mr. Cruz had the moments

23   where his conscience rang through, and he knew, whether it was

24   at 2 a.m. or in the middle of the day, he knew that what he was

25   doing was wrong.  This is a man with a Master's Degree in

H7kdcrus
                              Sentence

1    Adolescent Education.  He worked with children, and because he

2    worked with children he was more effective in doing what he did

3    than a person who did not.  He knew how to manipulate the

4    victims.  I don't suggest that he went for his master's degree

5    so that he could be a better manipulator, but these are the

6    tools, both his educational background and his daily

7    interaction with students, that were used quite effectively to

8    manipulate these victims and cause them harm.

9          His purpose was not to cause harm, but the consequence

10   of it, the foreseeable consequence, was to cause harm.  The

11   fact that he didn't have it as his purpose is just a function

12   of his focusing solely on his needs.

13         The point has been made that many agree that he

14   doesn't pose a risk of reoffending.  Well, I've looked, for

15   example, at Dr. Kreuger's report.  And Dr. Kreuger uses four

16   different risk assessment instruments, and three of them, on

17   the administration of the test, view the risk of reoffending in

18   a similar manner as low.  So, I'd like to focus on one of them.

19         It is a test called the Static-99R.  This is what

20   Dr. Kreuger says about the Static-99R.  He describes it as

21   "arguably the most validated and thoroughly studied risk

22   assessment instrument for sexual recidivism.  I computed

23   Mr. Cruz's score as being 5, which places him in the moderate

24   high risk category for sexual recidivism."

25         One of the factors in sentencing an individual that I

H7kdcrus
Sentence

1   must take account of is the need to protect the public from

2   further crimes of this defendant.  That is my obligation.  I

3   need to also ensure that any sentence imposed serves the

4   purpose of deterring others from engaging in similar conduct.

5   I need to, and I have, considered the Sentencing Guidelines,

6   policy statements, and official commentary of the United States

7   Sentencing Commission.  I've considered them in an advisory

8   manner, and recognize that I am not obligated to sentence

9   within the Sentencing Guidelines.  I acknowledge that I have

10  variance discretion.

11          For the crimes of Jon Cruz, I intend to sentence the

12  defendant to 84 months' imprisonment, ten years supervised

13  release, impose restitution in the amount of $12,200, waive the

14  fine based on the restitution obligation and limited assets and

15  presently limited earning ability, and impose the $100 special

16  assessment.

17          The foregoing is in my view sufficient but not greater

18  than necessary to achieve the purposes of the sentencing

19  statute, Section 3553.

20          Does the defendant or his counsel have any objection

21  to the Court's proposed sentence or to the statement of reasons

22  for that sentence?

23          MR. ZISSOU:  May I have a moment, Judge?

24          THE COURT:  You may.

25          (Pause)

H7kdcrus
                                    Sentence

1            MR. ZISSOU:  Judge, thank you for your indulgence.

2            I should, inasmuch as we have recommended a sentence

3    of 60 months in this case, obviously I object to the imposition

4    of the sentence.

5            THE COURT:  Well, it is not obvious.  I am asking

6    you --

7            MR. ZISSOU:  Yes.  I am objecting to the sentence.

8            THE COURT:  And how is that consistent with the plea

9    agreement in this case?

10           MR. ZISSOU:  Well, the plea agreement is a function of

11   the -- I think you are addressing the issue of appeal.  There

12   is no right to appeal; it has been waived at that rate.  But

13   inasmuch as we believe a sentence of 60 months is sufficient

14   but not greater than necessary, if I were to say I have no

15   objection, then I would be --

16           THE COURT:  I understand.  Very well.  Thank you.

17           Does the government have any objection to the Court's

18   proposed sentence or to the statement of reasons for that

19   sentence?

20           MS. CROWLEY:  No, your Honor.

21           THE COURT:  All right.  Mr. Cruz, please stand and the

22   Court will impose sentence.

23           Jon Cruz, it is the judgment of this Court that you

24   are hereby remanded to the custody of the United States Bureau

25   of Prisons to be imprisoned for a period of 84 months.

H7kdcrus
                              Sentence

1           Following release from imprisonment, you shall be

2     placed on supervised release for ten years, with the following

3     terms and conditions:  You shall not commit another federal,

4     state or local crime, nor illegally possess a controlled

5     substance, nor possess a firearm or destructive device.  You

6     shall refrain from any unlawful use of a controlled substance,

7     and shall submit to one drug test within 15 days of placement

8     on supervised release and at least two unscheduled drug tests

9     thereafter, as directed.

10          You shall cooperate in the collection of DNA as

11    directed.

12          The standard conditions of supervision 1 through 13

13    are imposed, with the following special conditions:

14          You shall submit your person, residence, place of

15    business, vehicle, and any other property or electronic devices

16    under your control to a search on the basis that the probation

17    officer has reasonable suspicion that contraband or evidence of

18    a violation of the conditions of release may be found.  The

19    search must be conducted at a reasonable time and in a

20    reasonable manner.  Failure to submit to search may be grounds

21    for revocation.

22          The Court shall inform any other residents that the

23    premises may be subject to search pursuant to the condition.

24          You shall undergo a sex-offense specific evaluation

25    and participate in an outpatient sex offender treatment and/or

H7kdcrus
Sentence

1    outpatient mental health treatment program approved by

2    Probation.  You shall abide by all rules, requirements and

3    conditions of the sex-offender treatment program, including

4    submission to polygraph testing.

5         You shall waive your right of confidentiality in any

6    records for mental health assessment and treatment as a

7    consequence of this judgment to allow the probation officer to

8    review your course of treatment and progress with the treatment

9    provider.

10        You shall contribute to the costs of services rendered

11   based on your ability to pay and the availability of

12   third-party payments.

13        The Court authorizes the release of available

14   psychological and psychiatric evaluations and reports,

15   including the Presentence Investigation Report, to the sex

16   offender treatment provider and/or mental health treatment

17   provider.

18        You shall not have contact with the victims in this

19   case.  This includes any physical, visual, written or

20   telephonic contact with such persons.  Additionally, you shall

21   not directly cause or encourage anyone else to have contact

22   with the victims.

23        You shall not have deliberate contact with any child

24   under 18 years of age unless approved by the Probation

25   Department.

H7kdcrus

Sentence

1        You shall not loiter within 100 feet of schoolyards,

2   playgrounds, arcades, or other places primarily used by

3   children under the age of 18.

4        You shall register with the state sex offender

5   registration agency in any state where you reside, are

6   employed, carry on a vocation or are a student, and shall

7   provide proof of registration to the probation officer.

8        You shall undergo a sex-offense specific evaluation

9   and participate in a sex-offender treatment and/or mental

10  health treatment program approved by Probation.  You shall

11  abide by all rules, requirements and conditions of that

12  treatment program.

13       You shall refrain from the use of any computer,

14  Internet-connected device, telephone, social media site as a

15  means of communicating with any child under the age of 18

16  unless approved by the Probation Department.

17       You shall provide the probation officer with access to

18  any requested financial information.

19       You shall not incur new credit card charges or open

20  additional lines of credit without the approval of the

21  probation officer unless you are in compliance with the

22  installment payment schedule.

23       You shall report to the nearest probation office

24  within 72 hours of release from custody.

25       It is further ordered that you shall pay to the United

H7kdcrus
                              Sentence

 1   States a special assessment of $100, which shall be due

 2   immediately.

 3          Restitution in the amount of $12,200 is ordered in

 4   this case.

 5          There is a proposed order of restitution.  Any

 6   objection to the order?

 7          MR. ZISSOU:  No, your Honor.  It will be paid

 8   forthwith.

 9          THE COURT:  All right.  And it is going to be paid?

10          MR. ZISSOU:  Forthwith.

11          THE COURT:  Thank you.

12          In light of the representation that it can be paid

13   forthwith, I will order that it be paid within 30 days of the

14   judgment in this case.

15          Mr. Cruz, you have the right to appeal the sentence I

16   have imposed in this case.  If you cannot afford the cost of an

17   appeal, you may apply for leave to appeal as a poor person.

18   The time limits for filing a Notice of Appeal are brief and

19   they are strictly enforced.

20          If you request, the Clerk of Court will prepare and

21   file a Notice of Appeal on your behalf immediately.

22          Do you understand all of that?

23          THE DEFENDANT:  I do, your Honor.

24          THE COURT:  All right.  Please be seated.

25          Anything further from the government?

H7kdcrus
Sentence

MS. CROWLEY:  Your Honor, the government moves to dismiss all open counts in the Indictment.

THE COURT:  Without objection, that is granted.

And from the defense?

MR. ZISSOU:  Would your Honor be kind enough to indicate in the judgment a recommended designation to FCI Danbury, please?

THE COURT:  I'm going to recommend that the defendant be housed in a facility as close to New York City as is feasible to facilitate family visitation.

I am also going to recommend that the Bureau of Prisons evaluate Mr. Cruz for appropriate mental health treatment.

Mr. Cruz, you have a job to do and you are making progress in that regard.  You are using your considerable skills, as you tell me, to help people who you encounter while you are incarcerated.  That's a good thing to do.  That's good for your own personal mental health, your own well-being, and your own sense of worth as a person.  You also have a lot of people on the outside, particularly your family members and close family friends, who have stood by you and some of your former students as well and former colleagues.  You need to figure out a proper way to make amends to them.

You also will have a long life after you get out. It's going to be more of a struggle than you can imagine to

H7kdcrus
Sentence

1    overcome your compulsion.  To acknowledge that you have a

2    compulsion and that you need help is a great start.  It's not

3    the end of the journey.  If you do things right and you work

4    hard, you can still have a full life.  You will be out.  You

5    will be on supervised release for a long period of time after

6    you are out, but you can have a life.  If you reoffend, you can

7    only imagine the consequences.  They will be harsh and severe.

8            I wish you and your family in this regard the very

9    best.

10           We are adjourned.

11

12                              -   -   -

13

14

15

16

17

18

19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300